We'll hear the first case, United States v. Geraldo Vargas Céspedes. May it please the court. Good morning. Morning. I'm Gary Villanueva and I represent the appellant, Geraldo, Emanuel Geraldo. I do so here and I do so below. The question we ask this court to resolve in his favor is whether the above guideline sentence imposed by the district court was unreasonably, even shockingly high, given that the district court fixed the borders of liability at murder two after a long fatico hearing and relied upon factors incapable of bearing the weight of a sentence located beyond the borders set by the murder two finding. I'd like to talk about just two or three factors which the district court relied upon in upping the ante and going beyond the borders that I'm asking this court to patrol. First, the district court found that there was an innocent victim involved and used that fact to up the ante, to go beyond the border. That is, in fact, true. The person who was killed was, in fact, innocent. He was not a gang member. However, the facts and circumstances surrounding the attack is not the typical indiscriminate, frustrated group who loses one target and reaches out and strikes out at another. The person, Mr. Vargas, who was initially attacked, went to... Doesn't he, I mean, when you say the savage murder, the murder of an innocent man, it's... He looks at the factors and he says they're outweighed by the seriousness of the offense, the savage murder of an innocent man, followed not by refraining from violence but by other acts of violence, including the attempted murder in which your client was stabbed. Absolutely, Your Honor, and let me address that. The seriousness of the offense is absolutely true, but the seriousness of the offense is included in the murder to guideline. It is enclosed within the sentence commission's... Are you saying this is double-counted? I believe so, Your Honor, with respect... certainly respect to the attempted murder, which was part of the calculation that arrived at the guideline that the district court went above. So, yes, it is a double-count because he was... That conduct, that subsequent soggato conduct was taken into consideration in the murder to guideline, and I do take that position. So, the other two factors, there's innocence. Vargas points out the two folks who he believed were the bad guys that they were after. He was the only person who knew who they were, and as a result, the district court imputing knowledge or assessing knowledge in Mr. Geraldo was misplaced since Mr. Geraldo had no knowledge of who the guys they were going against actually was. Are you saying that it's a clearly erroneous fact-finding that the defendants believed only that one of these people was fingered by Vargas? Right. The record is very clear. Vargas says, there they go, there they go, and they went to confront a group of people. So, yes, that was... The fact remains, soggato was innocent, but the information that they had at the attack demonstrated that Geraldo had no way of knowing that. There's only one person who could know that. Doesn't that contradict the whole idea of second-degree murder here? They went out to get these guys. I thought the idea of second-degree murder was, well, it was sort of impulsive to kill soggato.  That's correct, Your Honor. As the facts show, there was no discussion, there was no indication by the leaders of their subjective intent to kill soggato. There was none of that. This was a, as the district court at some point described, an uncoordinated melee. Second-degree murder covers a multitude of sins, of course, including relatively impulsive acts that don't involve going and hunting down a victim. And second-degree murder cases don't always come packaged with attempted murder additions. In New York, the maximum sentence for second-degree murder is a parolable 25-year-to-life sentence. So I'm having a little trouble understanding why this is an unreasonable sentence. You're treating this as if the guidelines are somehow sacred, and as in the old days, there needs to be something super special to get you above the guidelines. Why isn't this just sort of looking at the universe of murders and saying this is an especially bad one? Yes, and that's a valid question, because if factors are going to be reused to go outside the borders set by the guidelines, and we all recognize that the commission has empirical data, 30-odd years of experience and knowledge. When they set that guideline, if we're going outside of that, let's take a hard, long look at the reasons that we are. And I submit to this court that the reasons proffered by the district court were at least with respect to innocent victim factually inaccurate and with respect to bolstering and pumping the brakes did not seriously take into consideration the deficits and the youth that Mr. Giraldo was laboring under at the time. You say that, and correct me if I'm misunderstanding, that the sentence is procedurally unreasonable in part because the judge didn't consider the defendant's disability. That's correct. But when I read the record, it seemed to me that he discussed the disability at some length and explained how it might be factored into the defendant's decision to join the gang. He cited it as a possible mitigating factor. What's unreasonable? Let me respond to that. And he does. And the district court was very clear and conscientious and very thoughtful in using some of the mitigating factors that we offered to cap it above a guideline sentence. However, the two factors that he did utilize to go above the line, bolstering and failure to pump the brakes, which is a statement taken into consideration in the subsequent Sagado conduct. Bolstering. The district court did not take into consideration the core characteristics of ADHD or the core characteristics of a youthful offender, which we know are people, and specifically with Mr. Geraldo, who fails to access and understand the consequences of his actions, who does not assess risks, who has deep self-esteem issues, who's laboring under these very difficult conditions. And so when the court says it's disgraceful for you to boast about it, the court fails to realize, and you boasted about it and others don't, he's comparing him to somebody who doesn't have those problems. So the court doesn't take into consideration those factors, the mitigation factors that we offered on the critical question of whether or not the factors used to go above the line and beyond the border. He does not do it. And he doesn't do it with respect to pumping the brakes, because if he took it into consideration on the issue of pumping the brakes and subsequent conduct, the court would have noted that people who have these problems can't assess the risk, can't determine the consequences, and he's treating that person and comparing Geraldo to a person who doesn't labor under those disabilities. So respectfully, I don't believe that while the court certainly talked about it and he certainly kept his number and gave him a benefit above the line, he didn't take it into consideration to go above the line. Now you, in your brief on pages 25 to 26, say that the trial court here possessed limited judicial sentencing experience, having presided for barely five years over a mixed docket of more civil than criminal cases, but with respect to the Trinitarios gang alone, Sir, Judge Engelmeyer has sentenced over 70 members. Let me get this out. That was a silly statement by me, and I apologize for that statement. That was silly and uncalled for. And you're absolutely right, and this court is absolutely right. I went too far. Thank you for admitting that. Yes, thank you. I wanted to admit that, and thank you for bringing that up. That was silly. Thank you. You're welcome. My time is out. Are there any other questions? Thank you for your time. May it please the Court. Mr. LaRoche, Ms. Garnett, Mr. Villanueva, Mr. Brandon. My name is John Cachere. I represent Mr. Vargas. The Court has asked for some clarification for the parties on the matter of subject matter jurisdiction. Generally, all that's necessary in a federal criminal case to confer subject matter jurisdiction on a court is for the indictment to allege a federal offense and track the statute. There are exceptions where there's conduct that's outside the United States or the indictment doesn't allege an offense. In this case, concern, and I didn't do the trial work in this case. I was appointed on appeal. There's nothing in the record that I can find where Mr. Vargas ratified this second predicate act after he became 18 years old. Everything that the government relies on is prior to his 18th birthday. Now, there is an act, and I was kind of wondering if this would end up in the government's brief, but I didn't see it. In the pre-sentence report on paragraph 86, it talks about two burglaries that Mr. Vargas participated in in 2012, but they were never charged that I can see in the criminal history part of the pre-sentence report. And I'm not from this area, but looking at a city map of the Bronx, it doesn't look like the burglaries took place anywhere near this area where the Trinitarios were their territory. Well, this is a question that it seems to me does not go to guilt as such. It only goes to the question of whether he can be prosecuted, whether the statute requires that he be prosecuted at least in the first instance as a juvenile, right? That's what this is about. He doesn't need to have done a second act because he's only pled guilty to conspiracy to commit a RICO violation. It's certainly possible that I misunderstand the law, but my understanding is if Predicate Act No. 1 is committed as a juvenile, then there has to be something, and I've cited the cases in my brief. They're not from the Second Circuit, but they're all that I could find. He has to do something after he reaches 18 to ratify his involvement in this conspiracy. Yes, that's what would give the court jurisdiction, it seems to me. In other words, the statute is set up in such a way, as I understand it, and please correct me if I misunderstand it, that if someone is under 18 at the time of the offense, he needs to be prosecuted for an act of juvenile delinquency, and then alternatively, then maybe the government can get permission to prosecute him as an adult. Of course, if he is prosecuted as an adult, the normal adult standards would apply, and he can be guilty of conspiracy to commit RICO even based on one act. The problem is he was prosecuted as an adult from the get-go, and there's not any clear finding by anybody that he ratified the act as an adult, so that they followed the wrong procedures, it sounds like. Again, I didn't do the trial work. I asked, and this may not be in the 52 sealed documents that I wasn't allowed to view. I don't know what's there and what's not, so I don't know what the government did in terms of certifying him. The few seconds I've got left, I want to bring to the Court's attention, given the fact that we're arguing for structural error, not just Rule 11 error. We're arguing that we don't have to show that we wouldn't have pled guilty but for the error. Three cases post-Dominguez-Benitez that cite the footnote that I'm relying on. I see I'm about out of time. If you could just humor me here for a minute. One is 615 F. 3rd, 1260, footnote 3. The other two of them are from state courts, but the federal constitutional level of what's required for voluntary guilty plea still pertains, so I think they're instructive, if nothing else. 299 P. 3rd, 683, 688. The next one is 759 N. W. 2nd, 283, 287, footnote 4. The last one does not specifically cite to Dominguez-Benitez, but it basically makes a distinction between mere Rule 11 violations and due process, and that one is United States v. Bradley, 381 F. 3rd, 641, 645. And your argument on structural error is that he did it knowingly and voluntarily? That's correct. That's correct. I mean, maybe he understood what was necessary for a RICO violation, and maybe he didn't. There's just nothing in the record. The elements were not separately discussed by the judge when he pled, isn't that correct? Correct, and the case law that I read says there's basically three ways that you can do this. You can say counsel can make a representation that he's been over the elements, or the judge can say this is what the elements are, and I can't remember the third way, but I don't see any of that here. And this is a guy with a 65 IQ, at least according to the precinct's report. And, you know, I'm not suggesting that. Could someone have given him a lecture on relatedness and continuity? Well, the judge could have done what he did with the jurisdictional aspect. He could have, and I wrote some of this down here, he asked the government during the plea colloquy, okay, government, how are you going to establish the interstate commerce element? And the government gave an opinion, and the judge looked at defense counsel and Mr. Vargas and said, do you agree with it? Yes. Well, the judge could have done the same thing. He could have started this way. He could have said to prove a pattern of racketeering activity, the government must prove beyond a reasonable doubt, that they're related, that they pose a threat. Mr. AUSA, can you explain to me the facts the government is relying on to show Mr. Vargas' agreement with furthering of the drug activity enterprise of the Bronx Trinitarios gang? And the government would say something. And the judge could then turn to defense counsel or the defendant and say, do you agree with that? I mean, when you look at the plea hearing at 20, the court says, and you mentioned that you were aware of the gang's activity selling drugs. Can you specify what drugs or at least one such thing? And he says, marijuana, sir. Well, I mean, my concern there is he's aware they're selling it, and the distinction I make in the reply brief is there's a difference between being aware of and agreeing to that as being an endeavor that the enterprise is involved in that you want to further. So that's the distinction I make there. Let me ask you just one other thing on the burglary issue. You point to paragraph 86, and the counsel did seem to object to that, but not with respect to paragraph 129. It's also about the burglaries. Is that your understanding as well? I'm sorry, Your Honor, I didn't understand the question. If you look at paragraph 129, that also speaks of burglaries. It does. There was no objection to that. It's inclusion, right? There was no . . . Yes, Your Honor, it's correct that nobody objected that I can see at the trial court level to the fact that the factual basis or the elements weren't explained to the defendant. So there's no objection anywhere that I can see to that in the trial record, any of that. Thank you. Good morning. May it please the Court. I'm Jim Brandon. I represent Mr. Cespedes. Mr. Cespedes has a criminal history category of 1. He was 18 and barely 19 at the time of the offense, or at least the time that he was actively involved with the gang, which was six months. He faced a guideline sentence of 235 to 293 months at the time of sentencing, one that I think he might reasonably have expected to get, given his youth and the short period of time he was part of the gang and some of the other mitigating circumstances surrounding his life. Instead, he ended up being sentenced to not quite double, but 420 months imprisonment, which happens to be 110 months more than Mr. Giraldo, who in my opinion was the most closely similarly situated defendant to Mr. Cespedes. As I've set forth in . . . He committed two murders. He did. Mr. Cespedes participated in two murders as opposed to Mr. Giraldo's one. Right. But Mr. Giraldo . . . And not to undercut Mr. Villanueva's arguments for his client, I don't think anybody is seeking an upward enhancement at this point for him, but it's a mere fortuity that Mr. Giraldo didn't kill a second person. He was involved in a second stabbing. That person happened to live. But the quality of the act is very, very similar to Mr. Cespedes's second murder. What the judge did in this case is rather than choose Mr. Giraldo as the closest comparator, using his words, the judge compared him to the Lopez brothers, who were the head of this particular subset. They were older, more violent. Does Mr. Cespedes have the disabilities that Mr. Villanueva referred to in the case of Mr. Giraldo? I don't know. He does not have a specific disability, but he has his own set of mitigating circumstances. And the judge can weigh those. To the extent, however, that he adds 100-plus months, I find it, to me, very unreasonable, at least. I wanted to note, though . . . The judge says that the difference in the guideline range between one murder and two murders was only two and a half years, which the judge thought discounted the second murder far too much. Why was that? But in doing that, he completely decided that the grouping rules for the guidelines were irrational. So without understanding or making clear on the record that when employing that type of reasoning, he is obviously creating a nationwide disparity to other people similarly situated to Mr. Cespedes. I'm sorry. He also talks about other acts of violence that your client admitted to participating in. As also did Mr. Giraldo. The judge was thorough with regard to the sentencing. But I do believe that there were two overarching errors that he made. And one was in throwing out the grouping rules for the guidelines. And the second was comparing my client to the Lopez brothers, who faced mandatory life terms of imprisonment. So they got life four times over and three times over, respectively. So I think that the . . . But your client did not. He did not, because he was convicted of murder two after a plea, not murder one or murder in aid of racketeering. So they are very distinct co-defendants. My client is much closer to this co-defendant than to the Lopez brothers. So those are the two errors. And I refer the court to the Merced decision in the Third Circuit, which essentially remanded for resentencing when the sentencing judge found a very large downward variance because he didn't agree with the career offender guideline. This is exactly the flip of that. So that judge, the circuit found, had not explicitly recognized that he might be creating a risk of unwarranted disparities between the defendant and similarly situated recidivists in that case. So I don't know how this case is really any different. This judge just threw out the guidelines because, as you note, it didn't add enough, in his opinion, for the Canela murder, the second-degree murder, without recognizing that that's going to create a problem under the nationwide system that we have that the Sentencing Commission has set up. Thank you. Those are the errors. Thank you. May it please the Court. My name is Matthew LaRoche. I'm an assistant United States attorney in the Southern District of New York. I represent the United States in this appeal, and I represented the United States below. Could you address at the outset the issues we asked you to think about regarding jurisdiction with respect to Vargas? Yes, Your Honor. The district court appropriately exercised subject matter jurisdiction in this case. In this Court's decision in Wong, the Court stated that in order to determine the relevant act for determining whether the Juvenile Delinquency Act applies, you look at the actual crime charged in the indictment. You don't look at the underlying predicate acts. Here, the crime charged in the indictment is a conspiracy that spans well past the defendant's 18th birthday. I tend to agree with you that at the time the indictment is filed, it charges an adult crime against Mr. Vargas, right? But then what happens after that? In the case of Wong, there was a question raised as to whether he actually had committed the crime as an adult. So what, if anything, has to happen later on? Now, of course Mr. Vargas could be guilty of the crime charged in the indictment, if he were an adult, for participating in the conspiracy for a lesser time than the indictment charges, right? Yes, Your Honor. How do we know that that isn't what he pled guilty to when he did not admit at his plea to anything after age 18? And no one raised this issue at the sentencing, so there's not any clear finding by the district court that he did anything after his 18th birthday. Your Honor, I would disagree a little with sentencing. I think there was no dispute that the defendant was a member of the Trinitarios past his 18th birthday at sentencing. That was an issue, and just a little bit of context, in this case, this issue had come up, where we had identified people that were charged under the age of 18, under the Juvenile Delinquency Act, and were uncharged, essentially, taking out of the indictment. So the government was aware of it. Defense counsel was aware of the issue. At sentencing, there was absolutely no objection. How do we know that defense counsel for Vargas was aware of this issue? I'm sorry, Your Honor. I'm assuming based on what happened in the case, but more to the point. It's jurisdictional in any event. I agree, Your Honor. I think at sentencing, though, if the court's having concerns about whether this was, in fact, ratified, there are several things in the sentencing that should give the court comfort, a number of them being things that were not objected to, such as post-18th birthday activities that are cited in the PSR. They were not objected to. There's also a— What exactly are we referring to here? There's paragraph 129 of the pre-sentence report says, just as a sort of summary, that Mr. Vargas participated in the murder of Salgado as well as a violent assault and two burglaries. So those two burglaries is a reference back to the two burglaries in paragraph 86? I believe it is, Your Honor. And the district court adopted the pre-sentence report? Yes, Your Honor. The district court did adopt the pre-sentence report. I'd also note another paragraph in the pre-sentence report, which talks about the defendant being a member of the Trinitarios for the years prior to his arrest. It says several years prior to his arrest. And where is that? I believe that's paragraph 79, Your Honor. There's no definitive term of years in terms of what years? A number of years prior to his arrest would mean years, several—many years from when he was age 12 or something when the indictment begins to his—nearly his 18th birthday. I understand, Your Honor. I think the sentencing itself, there was clearly no indication that there was any issue with respect to his post-18th birthday activities with the Trinitarios. He had actually fled. There's reference to this in the PSR. We believed he fled. So I think there's a sufficient basis for the court to be— There's also—I mean, there is—I don't know if I'd go so far as to call it a presumption, but if you have been a member of a conspiracy, there normally needs to be an act of withdrawal, not just that you didn't commit any more murders or something like that. That's correct, Your Honor. And maybe to circle back to your original point, did there need to be something that happened for the court to confirm? I haven't found a case that suggests that is what the rule is in these. And I think there's an analogy here. When the court looks at subject matter jurisdiction with respect to 18 U.S.C. 3231, which just confers subject matter jurisdiction to the court for crimes that violate a federal statute, this court has said that the analysis in those cases is, quote, exceedingly narrow, and all the court is looking at is to see whether the indictment itself states a violation of federal law. Here, the indictment itself clearly states a violation that would satisfy the Juvenile Delinquency Act. So I think in these circumstances, both based on how the indictment was worded and also based on what happened at sentencing, I think it's sufficient to show that this court appropriately exercised subject matter jurisdiction in this case. What about the structural error claimed by Mr. Vargas' counsel, that he just didn't understand to what he was pleading? Yes, Your Honor. I think this is clearly not even close to a structural error that was suggested. And really the only case I can identify, Henderson versus the Henderson case that is cited in Mr. Vargas' brief, where they didn't go through a plain error analysis, that case could not be more different than this one. In that case, the defendant was charged with first degree murder. He ends up pleading guilty to second degree murder. He was never even presented with a document charging him with second degree murder. He wasn't informed of the nature of the charges. There was no indication that he'd ever reviewed the charges with his attorney. How could the district court assure itself that Mr. Vargas understood the conspiracy charge? I think there are a number of factors, Your Honor. Just to begin at the outset of the plea proceeding, the district court asks if he'd discussed the charges with his attorney, if he'd reviewed possible defenses. Then the district court asks, have you reviewed the indictment? Has it been translated? Has it been discussed with your own attorney? And the indictment in this case is not a one page indictment. It's an extensive document that discusses every aspect of the conspiracy, of the enterprise, of the means and methods. He did not go through the elements of conspiracy with Mr. Vargas, who I guess we all agree had a low IQ. He didn't discuss the elements and ask him if he understood each of them. That's correct, Your Honor. And this court has stated in several cases and strongly suggested, I would say, that it is often the better practice to go through the elements one by one. And I think in effect, based on the record here, all the elements were covered. He discussed in detail the interstate commerce element. He referred to the indictment, which specifically has the elements, both the pattern of racketeering activity, an agreement between two or more persons to join that conspiracy, to join the enterprise. And based on the defendant's own elocution, I think that you can see that he understood what the nature of the charges are. He said, I was, quote, a part of the gang. I, quote, participated in the activities. I, quote, knew the gang was dealing drugs. And then he discusses at length the Salgado murder, which is also included in the exhibit to the plea agreement, where it talks about the specific details of retaliation against rival gang members, which is, again, if you go back to the indictment, is specifically one of the things that the gang has done. So I think in those circumstances, he did understand the nature of the charges as has been required by the case law. On the subject matter jurisdiction issue, just to return to it for a second, if we're still uncertain, should we remand? I don't believe so, Your Honor. In these circumstances, I don't think you need to remand, particularly given how the sentencing went. And I also don't see, and I haven't seen a case that suggests this, that there is a post-indictment evidentiary burden for the government in a JDA, in a Juvenile Delinquency Act, a case that could potentially apply. The case law doesn't play that out, and other circuits that have reviewed Wong have said the same thing. And I also think that Judge Lynch's point is valid, that there is no evidence whatsoever that he actually withdrew from this conspiracy, and there is certainly no suggestion anywhere in the sentencing that I can recall that he withdrew from this conspiracy. So with those factors, I don't think it is necessary in these circumstances to go back to the district court to make that determination. Unless there are any other questions, the government will rest on its brief. Thank you. Do you have some time in rebuttal? Do you want to use it? None of them asked for it. None of them asked for it? No. Oh, okay, no time. Okay, thank you. All right, thank you.